IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM C. STILLWAGON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:11-cv-1338 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| INNSBROOK GOLF & MARINA, LLC, a North | ) | |
| Carolina Limited Liability Corporation also known | ) | |
| as INNSBROOK GOLF & BOAT, LLC, RIAL | ) | |
| CORPORATION, a North Carolina Corporation, | ) | |
| ALOIS RIEDER, an adult individual, and | ) | |
| RICHARD RIEDER, an adult individual, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Before the Court is the Motion to Dismiss the Amended Complaint for Lack of Personal

Jurisdiction or, in the Alternative, Transfer Venue (Doc. No. 13) filed by Innsbrook Golf &

Marina, LLC and Rial Corporation ("Corporate Defendants"). The Court has considered

Plaintiff Stillwagon's Amended Complaint (Doc. No. 11) and the various briefs and supporting

materials (including affidavits and exhibits filed by both the Corporate Defendants and Plaintiff)

offered in support of and in opposition to the Motion to Dismiss or Transfer Venue (Doc. Nos.

14-16, 19, 23). For the reasons that follow, Corporate Defendants' Motion is denied.

### I. Background

Under Federal Rule of Civil Procedure 12(b)(2), when the issue is raised by motion, the

burden of proving personal jurisdiction over a defendant falls on the plaintiff. *Metcalfe v.*

*Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). When reviewing the plaintiff's

proof, the court must accept all factual allegations contained therein as true and construe all disputed facts in the plaintiff's favor. *Id.* Therefore, for the purposes of disposition of Defendants' Motion to Dismiss, or in the alternative, Transfer Venue, the essential facts are as follows.

Plaintiff William C. Stillwagon ("Stillwagon"), a Pennsylvania resident, brings a breach of contract claim against Defendants Alois and Richard Rieder ("the Rieders"), who are residents of Austria and the principal owners of two foreign companies: Water Springs Development of Switzerland and Nufin Anstalt of Liechtenstein. These companies are shareholder owners of the Rial Corporation ("Rial"), a named defendant. Rial is, in turn, the sole shareholder of Innsbrook Golf & Marina, LLC ("Innsbrook"). Innsbrook is the remaining named defendant.

In 1980, Stillwagon began providing personal services to the Rieders and their companies. He executed real estate deals, developed properties, managed company finances, and served as Rial's president. Stillwagon performed the substantial part of his services from his office in Greensburg, Pennsylvania. The Rieders and Corporate Defendants engaged Stillwagon in various capacities for nearly thirty years.[1]

Stillwagon and the Rieders terminated their employment relationship via a Severance and Release Agreement ("Severance Agreement") on November 9, 2009 (Doc. 1-2, Ex. A). Stillwagon and Alois Rieder are signatories to the Severance Agreement, with Alois Rieder signing it as the "authorized representative" of Richard Rieder, Rial, Innsbrook, Seg Anstalt, Nufin Anstalt, Watersprings Development, and All Seasons Development, Inc.[2] The Severance Agreement calls for Stillwagon to receive four annual installments of $300,000 each, totaling

---

[1] The Rieders are also named Defendants, but have not yet been served in Austria. Counsel for Corporate Defendants have expressly disclaimed any representation of the Rieders in this action.

[2] The Severance Agreement collectively designates all of these parties as "Owner" and binds Stillwagon and "Owner" to its terms.

$1.2 million, beginning on April 1, 2010. Stillwagon received the first payment in April 2010. He claims that the Defendants breached the Severance Agreement on April 1, 2011, when they refused to pay the second $300,000 payment. He further alleges that the Defendants have committed an anticipatory breach by expressly refusing to make any future payments under the contract. This equates to a claimed breach stemming from $900,000 in non-payments.

Corporate Defendants move to dismiss Stillwagon's Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). They claim to never have directed any activity to the Commonwealth of Pennsylvania in furtherance of performing the Severance Agreement. Corporate Defendants note that Stillwagon's duties related entirely to properties located in North Carolina and cite to the Severance Agreement's choice of law clause, which provides:

> This Agreement has been negotiated and executed in the State of North Carolina and is to be performed in the State of North Carolina. This Agreement shall be governed and interpreted in accordance with the laws of the State of North Carolina, including all matters of construction, validity, performance, and enforcement, without regard to North Carolina's conflict of laws rules.

Severance Agreement at ¶ 10. Furthermore, Corporate Defendants assert that this Court's exercise of personal jurisdiction over them would offend traditional notions of fair play and substantial justice.

In the alternative, Corporate Defendants request a venue transfer to the Eastern District of North Carolina[3]. They assert that personal jurisdiction exists in North Carolina, that a substantial part of the events giving rise to Stillwagon's claim occurred in that judicial district, and that the private and public factors illuminating the application of 28 U.S.C. 1404(a) support such a transfer.

---

[3] This action was presented to this Court when Defendants removed it from the Court of Common Pleas of Westmoreland County (Doc. No. 1).

## II. Corporate Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant contests personal jurisdiction, the burden shifts to the plaintiff to prove its existence. *Metcalfe*, 566 F.3d at 330; *Mellon Bank (E.) PSFS, Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). The plaintiff may establish a prima facie case of personal jurisdiction by demonstrating, with reasonable particularity, sufficient contacts between the moving defendant and the forum state. *Metcalfe*, 56 F.3d at 330; *Farino*, 960 F.2d at 1223. A plaintiff may demonstrate these sufficient minimum contacts via affidavits or other competent evidence. *Metcalfe*, 56 F.3d at 330 (*quoting Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996)). The court must accept the plaintiff's allegations as true and construe disputed facts in his favor. *Id.*

A district court may exercise personal jurisdiction over a non-resident defendant in accordance with the law of the state where the district court sits. Fed. R. Civ. Pro. 4(e); *Abel v. Kirbaran*, 267 Fed. App'x 106, 108 (3d Cir. 2008.); *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma S.A.*, 623 F.3d 147, 155 (3d Cir. 2010). As Pennsylvania's long-arm statute is coextensive with the United States Constitution, the limits set by Due Process Clause of the Fourteenth Amendment govern the jurisdictional inquiry here. 42 Pa. Con. Stat. § 5322(b); *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). The Due Process Clause requires that sufficient minimum contacts exist between the non-resident defendant and the plaintiff's chosen forum for personal jurisdiction to be proper. *Time Share*, 735 F.2d at 63.

Personal jurisdiction exists in two forms: specific and general. *Abel*, 267 Fed. App'x at 108. "Specific jurisdiction" applies where the defendant purposefully directed certain of its activities at the forum state, and the cause of action arises out of those same activities. *Id.*; *O'Conner v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007); *Centimark Corp. v.*

*Lavine*, No. 11cv0757, 2011 WL 2941214, at *5 (W.D.Pa. June 20, 2011). If these two requirements are met, the district court then considers whether the exercise of specific jurisdiction comports with notions of fair play and substantial justice. *O'Conner*, 496 F.3d at 317; *Centimark Corp.*, 2011 WL 2941214, at *5. The broader jurisdictional predicate -- general jurisdiction -- is proper where the defendant maintains continuous and systematic contacts with the forum, making the exercise of that state's judicial power over the defendant proper. *Metcalfe*, 566 F.3d at 344; *Abel*, 267 Fed. App'x at 108.

Regarding contract claims, the Supreme Court in *Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985), noted that parties "who reach out beyond one State and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Farino*, 960 F.2d 1217 at 1222 (quoting *Burger King Corp.*, 471 U.S. at 462) (internal quotations omitted). It is not unreasonable to require a contracting party to give an account in a particular forum when that party purposely availed itself of the privilege of conducting business there or created a continuing obligation with a forum resident. *See id.* (citing *Burger King Corp.*, 471 U.S. at 475-76).

That being said, the mere act of contracting with a forum resident, in absence of other contacts, is not enough to satisfy the minimum contacts requirement of the Due Process Clause. *Farino*, 960 F.2d at 1223. However, a court may find that the requisite connections exist when looking at the totality of the parties' relationship, including their actual course of dealing. *Id.*; *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). *See also Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177-78 (3d Cir. 2006). For instance, mail and telephone communications

sent by defendant into the forum are contacts supporting jurisdiction. *Remick*, 238 F.3d at 256; *Telcordia Tech, Inc.*, 458 F.3d at 178.

Here, Stillwagon, in response to Corporate Defendants' motion[4], provided the Court with a wealth of evidence[5], which demonstrates that Corporate Defendants had multiple and pervasive contacts with the Commonwealth of Pennsylvania over a long period of time. Corporate Defendants purposefully directed a myriad of activities into Pennsylvania. Assets flowing into and out of a Pennsylvania bank account amounted to nearly $1.5 million over time, and other financial transactions with funds flowing into and out of Pennsylvania were of similar or greater magnitude. Stillwagon has proffered corporate bank statements, supporting his contention that Corporate Defendants extensively utilized Pennsylvania financial institutions for transactions relating to the development of their businesses in which Stillwagon was significantly involved.[6] Correspondence sent by Corporate Defendants into Pennsylvania show that they relied upon Stillwagon to perform wide-ranging services for them from his Greensburg, Pennsylvania office. In fact, several provided letters are addressed directly to Rial at this office's address, indicating that the company, if not officially headquartered in Greensburg, certainly used that location as a staging ground for significant business activities orchestrated by Stillwagon. At least one Rial corporate board meeting occurred in Greensburg as demonstrated by meeting minutes and an email. Rial purchased corporate insurance policies, which covered the North Carolina properties, in Pennsylvania via a Greensburg, Pennsylvania broker, as recently as one (1) year before the Severance Agreement was entered into. Accounting services for Rial and Innsbrook were performed by Pennsylvania accountants. Furthermore, central to this case is the fact that

---

[4] Corporate Defendants' motion was supported by an essentially conclusory affidavit.

[5] Stillwagon's evidence included contemporaneous business and financial records of recent vintage to these matters.

[6] These transactions are claimed to have included negotiations with a company owned by Latrobe, Pennsylvania native Arnold Palmer and related to the Innsbrook golf course.

Corporate Defendants are parties to a contract with a Pennsylvania resident, who is the sole designated recipient of the contract's million-dollar-plus performance.

Corporate Defendants contend that the Court should limit its inquiry only to the events surrounding the Severance Agreement. They argue that since the claim in this case arises from their failure to perform under that contract, which states that it was negotiated and executed in North Carolina, is to be performed in North Carolina, and is governed by the laws of North Carolina[7], insufficient contacts exist for this Court to exercise specific personal jurisdiction over them in this case. The Court disagrees.

To separate the Severance Agreement from the lengthy, multi-decade course of dealings between the parties that gave rise to it creates an artificial construct. Corporate Defendants admit that the "the entire purpose of the [Severance] Agreement was to end the Plaintiff's performance of services on the Defendants' behalf." Mem. in Supp. Defs.' Mot. to Dis. Am. Compl. or Transfer Venue 9 (Doc. No. 14). That performance occurred over the course of nearly thirty years, during which Corporate Defendants continuously availed themselves of Stillwagon's services in Pennsylvania and of a wide range of services with Pennsylvania roots. Stillwagon's claim arises directly from this extensive working relationship, the capstone of which was the Severance Agreement at issue here, making the exercise of specific personal jurisdiction proper.[8]

---

[7] That detailed contract, while it contains a choice of law clause, notably lacks a forum-selection clause.

[8] Corporate Defendants attack Stillwagon's proffered documentation of "minimum contacts" and of a "systematic and continuous relationship" with Pennsylvania by alternatively arguing that any contacts with this state were purely for Stillwagon's convenience, that the Corporate Defendants really did not have much contact with Pennsylvania at all, and, finally, no matter how characterized, such contacts simply were not enough. Defs.' Reply in Supp. Of Mot. to Dis. Am. Compl. or Transfer Venue 2-4 (Doc. No. 19). These arguments seemingly ignore (a) a Pennsylvania bank account in the name of Rial Corporation (with First Commonwealth Bank) with assets in excess of $200,000; (b) letters regarding Rial business dealings addressed to Plaintiff as "President" of Rial, signed by the Corporate Defendant's motion affiant, directed to Stillwagon's Greensburg address; (c) the fact that those letters specifically concern the Innsbrook development; and (d) the placement of insurance with a Latrobe, Pennsylvania broker for Rial's North Carolina property  None of this would appear to be only for Stillwagon's convenience, and all are indicia of a consistent and material transactional history with and in Pennsylvania.

In addition to the Court finding that a basis for the exercise of specific personal jurisdiction over Corporate Defendants exists, the Court would reach the same result regarding the exercise of general jurisdiction. Corporate Defendants appear to have maintained continuous and systematic contacts with Pennsylvania such that general jurisdiction would be proper. As stated above, Stillwagon's affidavit and supporting materials demonstrate that Corporate Defendants[9] essentially established a satellite business office in Greensburg, Pennsylvania, where they, *inter alia*, utilized Pennsylvania financial institutions and other service providers. Admittedly, many of Corporate Defendants contacts with Pennsylvania ceased upon the Severance Agreement's execution in 2009. However, that span of two years, in the context of a thirty-year course of prior dealings, would not divest this Court of general jurisdiction. *See Leo v. Kerr-McGee*, No. 93-1107 (JEI), 1996 WL 254054, at *4 (D.N.J. May 10, 1996) (refusing to find general jurisdiction where two company defendants ceased activities with the forum more than fifty years before, but noting that "it might be reasonable for a Court to find general jurisdiction over a company that ceased its systematic forum activities only within the last few years."); *Ins. Data Processing, Inc. v. Old Charleston Ins. Companies*, No. 88-4479, 1989 WL 157138, at *5 (E.D.Pa. Dec. 28, 1989) (declining to exercise general jurisdiction where a company's activities in the forum ceased ten years before the execution of a new contract with a forum resident).

The Court is also not persuaded by Corporate Defendants' argument that requiring them to defend this suit in Pennsylvania offends traditional notions of fair play and substantial justice. Corporate Defendants assert that they are "North Carolina entities" whose purpose is to develop

---

[9] The Court notes that the specific recitals within the Severance Agreement's preamble and the various materials submitted by both Stillwagon and Corporate Defendants illustrate that the parties themselves have during their course of dealings seemingly treated all of the Corporate Defendants as one operational entity.

property within that state's borders.[10]    Even if true, and while the ultimate benefits of Stillwagon's labors affected the properties in North Carolina,[11] those labors (and the extensive business dealings between Stillwagon and Corporate Defendants) took place in a substantial part in Greensburg, Pennsylvania consistently and over a long period of time.  Corporate Defendants engaged actively, over a long period of time, with Pennsylvania entities and performed significant business here.  Their business and financial dealings and affairs reached far beyond Stillwagon to include other Pennsylvania businesses and individuals, from banks to accountants to insurance brokers to Arnold Palmer.  It does not offend notions of fair play and substantial justice to have a Pennsylvania court resolve a dispute regarding the termination of a central part of those business dealings, and the other considerations presented do not render the exercise of personal jurisdiction "unreasonable." *See Burger King*, 471 U.S. at 476.  It simply was not at all unforeseeable that Corporate Defendants would be "haled into court" in Pennsylvania to litigate these matters. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### III. Corporate Defendants' Request for Transfer of Venue

Having found this Court's exercise of personal jurisdiction over Corporate Defendants proper, the Court now turns to Corporate Defendants' request for a transfer of venue to North Carolina.  When a case is brought before a district court of competent jurisdiction, the court may for the convenience of parties and witnesses, in the interest of justice, transfer the suit to any other district or division where it might have been brought.  28 U.S.C. § 1404(a).  The party moving for a venue transfer bears the burden of proving the need for the transfer. *Jumara v.*

---

[10] Corporate Defendants also contend that since North Carolina law governs the contract, that state has a substantial interest in interpreting its own law.  Be that as it may, district courts routinely apply the law of another forum to the cases before them, either pursuant to contract terms or their forum's choice of law methodology.

[11] This is a question of personal, not *in rem* jurisdiction; therefore, the location of Corporate Defendants and their holdings is not controlling.

*State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). That being said, the plaintiff's choice of venue should not be lightly disturbed. *Id.*

When deciding if a transfer is warranted, a court is not limited to the language of section 1404(a). *Jumara*, 55 F.3d at 879. Instead, a court should consider all relevant factors, balancing private and public interests, to determine if litigation can more conveniently proceed and the interests of justice better served in the requested venue. *Id.* Private interests include the location of books and records, where the claim arose, and the availability of witnesses. *Id.* Public interests include matters such as judgment enforceability, judicial efficiency, and forum public policy. *Id.*

The Court finds no substantial reason to disturb Stillwagon's choice of venue. This case arises from a failure to pay a Pennsylvania resident under the terms of the Severance Agreement. The Severance Agreement itself sprang from the parties' extensive business relationship involving activity in this district for decades, and Stillwagon fulfilled a substantial part of his duties to Corporate Defendants from his Greensburg location. Therefore, to the extent it would become relevant, some portion of the evidence of the parties' dealings, such as meeting minutes and bank transactions, would likely be located here.[12] Furthermore, witness availability, judgment enforceability, or judicial efficiency would not be improved by a transfer to the Eastern District of North Carolina. Stillwagon resides in Pennsylvania, the Rieders (including Alois Rieder, the corporate signatory to the Severance Agreement) reside in Austria, Plaintiff's counsel is a resident of this district, and counsel for Corporate Defendants hale from South Carolina and Pennsylvania. In short, it appears that the only things of possible relevance located in the

---

[12] The obligation to pay Stillwagon under the Severance Agreement appears to be unconditional. Severance Agreement at ¶ 1. Corporate Defendants have not yet answered, setting forth their defenses to the breach of contract claim of the Amended Complaint or outlining facts as to why Pennsylvania (and this district) are, or are not, material to those defenses.

Eastern District of North Carolina, at this juncture, are the properties to which Stillwagon's work for Corporate Defendants related and the courthouse where Corporate Defendants would prefer to litigate this case. Neither is a sufficient basis, individually or together, to cause the transfer of this action.

*IV. Conclusion*

Corporate Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is denied. Furthermore, Corporate Defendants' Request for a Venue Transfer to the Eastern District of North Carolina is denied.

Mark R. Hornak
United States District Judge

Dated: 2|13|12